■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

LUIS MALDONADO, Also Known as MR. CLEAN, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lodato, J.), rendered February 25, 1982, convicting him of murder in the second degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law and the facts, by vacating the conviction of murder in the second degree with respect to the first count of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment. As so modified, the judgment is affirmed.

The defendant Luis Maldonado, and his codefendants Anderson Garcia and Evaristo Aponte, were charged with and jointly tried for the murders of Victor Martinez and Robert Toro. It was the People's theory that Maldonado was an accessory to both murders. However, our review of the record indicates that the evidence against Maldonado, which was entirely circumstantial, was insufficient to support the verdict with respect to the Martinez murder.

Viewing the testimony in a light most favorable to the People (see, People v Betancourt, 68 NY2d 707, 709), the following facts were adduced: The night before the Martinez murder, Maldonado and Aponte were overheard threatening to kill Martinez during an argument concerning money they claimed Martinez owed them for drugs. On the day of the Martinez murder, Garcia was seen talking with Martinez and Toro on the corner of South 2nd Street and Bedford Avenue. There was no evidence presented as to the nature of the conversation. Garcia then continued to walk along South 2nd Street. When he was standing in front of the entrance of the building at 136 South 2nd Street, Garcia faced across the street in the direction of Maldonado's car which was parked in a lot, and Garcia's "mouth was moving". Maldonado leaned out of the car and appeared to speak to Garcia; Garcia pointed to the corner where the two men were standing. Again, there was no evidence as to the nature of this conversation.

After about 15 to 20 minutes, the Maldonado car was still parked in the lot. Toro came down the stairs of 136 South 2nd Street. Garcia, then armed with a small caliber pistol, subsequently came out of an apartment and ran down the stairs. Shortly thereafter, Garcia and Toro entered a van that was parked directly across the street, by the entrance to the lot where Maldonado's car was parked. The van was driven away and Maldonado and Aponte followed in Maldonado's car.

Subsequently, Martinez's body was found in the apartment that Garcia had exited.

The next day, Maldonado, Aponte and Garcia were seen sitting in another car parked near 136 South 2nd Street. Maldonado was in the front passenger's seat, Aponte was in the driver's seat, and Garcia was in the back seat. As Toro walked down the street and was about six feet from the defendants' car, a shot was fired which appeared to come from the front driver's side of the defendants' vehicle. When the shot was fired, both Maldonado and Aponte were facing to their left, toward Toro. Although the witnesss who testified to seeing Toro's murder stated that he could not notice anyone in the vehicle holding a gun, he did see Aponte's body move when the shot was fired. The car in which the defendants were seated was driven away; however, within one hour after the Toro murder, all three defendants were observed to be back at the scene. The testimony of medical examiners indicated that Toro had been shot with a shotgun and Martinez had been shot with a small caliber revolver.

Under these circumstances, the evidence against Maldonado did not establish, beyond a reasonable doubt, that he solicited, requested, commanded, importuned or intentionally aided Garcia or another person to murder Martinez (see, Penal Law § 20.00). At best, the People have established motive and the defendant's presence in an automobile across the street from the building where Martinez's body was found. There is no evidence that Garcia knew about the threats made by Maldonado and Aponte against Martinez and that Garcia's "conversation" with Maldonado across a street had anything to do with the subsequent murder. Similarly, the fact that Maldonado was together with Aponte and Garcia in the vehicle from which the shot was fired that killed Toro does not necessarily lead to the conclusion that Maldonado was criminally involved in the Martinez murder.

Accordingly, we cannot say that the hypothesis of guilt flowed naturally from the facts proved to the exclusion of every reasonable hypothesis of innocence " 'to a moral certainty' " (People v Benzinger, 36 NY2d 29, 32). Therefore, Maldonado's conviction and sentence for Martinez's murder, under the first count of the indictment, is vacated and that count of the indictment should be dismissed.

However, we conclude that the jury could find Maldonado accessorily liable for the Toro murder. From the evidence of Maldonado's conduct, the jury could reasonably have inferred

that he had knowledge of Martinez's murder and that together with Aponte, he aided Garcia in killing the witness to that murder *(see, People v Johnson,* 101 AD2d 684; *cf. People v Goodman,* 69 NY2d 32).

We have considered the other contentions raised by the defendant on appeal and find them to be either unpreserved for our review or without merit. Mollen, P. J., Lawrence, Eiber and Kunzeman, JJ., concur.