■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE CUMMINGS, Also Known as BARRINGTON STEPHENS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Sangiorgio, J.), rendered April 26, 1982, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, after a nonjury trial, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the case is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The findings of fact have been considered and are determined to have been established.

On the evening of October 12, 1979, Vansel Beech was shot to death in front of his apartment building in Kings County. The fatal shots were fired from a gold Trans Am automobile in which the defendant and three other unidentified individuals were seated. It is unknown which of the individuals fired the shots and the murder weapon has never been recovered.

The defendant was charged and subsequently convicted of murder in the second degree and criminal possession of a weapon in the second degree, following a bench trial. On appeal, the defendant contends, *inter alia,* that the evidence was legally insufficient to sustain these convictions in that there was no proof that he actually fired the fatal shot or that he harbored the requisite mental culpability so as to be held accessorially liable for the crimes charged. Thus, the ultimate question we must decide is whether the evidence presented at trial, when viewed in the light most favorable to the People, was sufficient to support the conclusion that the defendant

intended to, and did, in fact, participate in the murder of Vansel Beech.

At trial, Joseph Paquette, the principal witness for the prosecution, testified that a few minutes prior to the shooting, he had left the victim's apartment. As he walked outside, he passed directly in front of a gold Trans Am which was double-parked a short distance from the entrance to Vansel Beech's building. Although its headlights were off, Paquette was able to observe that four individuals were seated in the car. Of the four, he only recognized the defendant, having previously engaged in certain drug transactions with him. The defendant was seated in the rear, on the passenger side of the vehicle. Paquette then walked to his own apartment building, which was just across the street, and proceeded up to his second-floor apartment, which faced the street. He peered out the window and from this vantage point observed Vansel Beech step onto the street. Paquette then noticed that the headlights of the Trans Am were turned on, and that the vehicle slowly moved forward until it was directly in front of the entranceway to Beech's building. It was at that moment that Paquette heard several gunshot blasts which, he claimed, emanated from the passenger side window of the two-door vehicle. Paquette watched as Beech fell to the ground. Immediately after the shots were fired, the Trans Am was quickly driven from the scene.

According to the witness, at the time the shots were fired, the defendant had leaned forward in the vehicle toward the front seat area. Paquette testified, however, that he was unable to see the defendant's hands, nor did he see the gun.

Recognizing that there was no proof that the defendant was the actual shooter, the People proceeded on the theory that the defendant had acted in concert with others to cause the death of Vansel Beech.

It is, by now, well settled that in order to hold an accessory liable for the crime committed by the principal actor, the People must establish, beyond a reasonable doubt, that the accessory possessed the mental culpability necessary to commit the crime charged, and that in furtherance thereof, he solicited, requested, commanded, importuned or intentionally aided the principal (see, Penal Law § 20.00; *People v La Belle,* 18 NY2d 405; *People v Hayes,* 117 AD2d 621, *lv denied* 68 NY2d 668; *People v Capella,* 111 AD2d 179; *People v Karchefski,* 102 AD2d 856; *People v Reyes,* 82 AD2d 925). While the People were not obligated to prove that the defendant fired

the fatal shot in order to obtain a conviction *(see, People v Brathwaite,* 63 NY2d 839), proof that the defendant harbored the specific intent to kill was critical to the People's case for "[w]ithout adequate proof of a shared intent with the principal actor, there is no community of purpose and therefore no basis for finding [that the] defendant acted in concert with the actual 'shooter' " *(People v McLean,* 107 AD2d 167, 169, *affd* 65 NY2d 758).

With reference to the facts before us, we find that the People failed to present sufficient evidence, circumstantial or otherwise, to establish that the defendant possessed the requisite intent to kill Vansel Beech. Indeed, the evidence in this case, when considered in the light most favorable to the People, established nothing more than that the defendant was a passenger in the vehicle from which the shots were fired *(see, People v Jones,* 89 AD2d 876). The defendant's conviction, however, cannot be founded on the mere fact that he was present in the automobile, without further proof that he aided, abetted or otherwise participated in the homicide *(see, People v Slaughter,* 83 AD2d 857, *affd* 56 NY2d 993). In the instant case, this essential proof is lacking. As in *People v Monaco* (14 NY2d 43, 45), "[n]o agreement to kill, no purpose to kill, [and] no expressed intent to kill" can be gleaned from the evidence. The People simply failed to prove that the defendant assumed any purposeful role in the homicide, or that he intended its result. In fact, the record is utterly devoid of evidence that the defendant even knew beforehand of, much less participated in, the murder of Vansel Beech.

Our decision in *People v Maldonado* (126 AD2d 670, *lv denied* 69 NY2d 883), wherein the victim was similarly killed as a result of a shot fired from a vehicle, does not compel a contrary result. In *Maldonado,* unlike the case at bar, the People adduced sufficient circumstantial evidence from which the jury could reasonably infer the existence of a motive to kill. Moreover, the weapon utilized in *Maldonado* was a shotgun, an object which is not readily concealable. Accordingly, the jury could have reasonably concluded that the defendant, in that case, had knowledge of the presence of a shotgun in the vehicle and that he, acting in concert with others, laid in wait for the victim in order to effectuate his murder.

The People, in the instant case, however, adamantly contend that there is no reasonable view of the evidence which could support a finding that the defendant was merely an innocent passenger in the vehicle. In support of this conten-

tion, the People place great emphasis on the fact that the defendant was seen leaning toward the front of the vehicle at the time the shots were fired. The People suggest that this evidence demonstrates that the defendant engaged in a joint design to effect the death of the victim, for if he had truly been ignorant of the impending shooting, he would have recoiled or ducked rather than have leaned toward the source of the gunfire. While a defendant's guilt may, of course, be proven by circumstantial evidence, the facts from which the inference is drawn must exclude, to a moral certainty, every reasonable hypothesis of innocence (see, People v Cleague, 22 NY2d 363, 365-366; People v Borrero, 26 NY2d 430; People v Benzinger, 36 NY2d 29). We find that the fact that the defendant leaned forward is equally consistent with an interpretation of innocence as it is with guilt. It is quite possible that the defendant, surprised by the gunshots, reacted instinctively, and moved forward in an attempt to disarm the actual shooter. The People's interpretation of the factual scenario viewed by their witness, while logical, is nevertheless, purely speculative and founded entirely on equivocal facts. Accordingly, it cannot be said that the prosecution met its burden of excluding, to a moral certainty, every other hypothesis but that of the defendant's guilt. The conviction on the count of the indictment charging the defendant with murder in the second degree must, therefore, be reversed.

Similar problems are present with respect to the defendant's conviction for criminal possession of a weapon. The statutory presumption contained in Penal Law § 265.15 (3) is inapplicable to the circumstances at bar since no weapon was ever recovered and its location in the car was never ascertained. Moreover, the People failed to establish that the defendant actually had physical possession of the weapon at some point in time or that he had exercised dominion or control over the weapon. The defendant was never seen with the gun and there was no evidence adduced to suggest that he had seen the weapon prior to its use, that he was aware of its existence, or that he knew, in advance, that someone in the car was in possession of the weapon.

The People's reliance on an acting in concert theory with respect to the weapon possession charge is similarly unavailing since there was no evidence that the defendant solicited, requested, commanded, importuned, or intentionally aided another individual to possess the firearm.

Accordingly, we conclude that the evidence was insufficient, as a matter of law, to establish the defendant's guilt of the

possessory crime, and his conviction on the weapon possession charge must, therefore, also be reversed.

In view of our determination, we need not reach the other issues raised by the defendant on this appeal. Bracken, J. P., Eiber and Kunzeman, JJ., concur.

Lawrence, J., dissents, and votes to affirm, with the following memorandum, with which Rubin, J., concurs. I find that the evidence, when viewed in a light most favorable to the People, was of sufficient quality and quantity to sustain the defendant's conviction. I also find, after a review of the facts, that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]). I do not find that this case is distinguishable from our recent decision in *People v Maldonado* (126 AD2d 670, *lv denied* 69 NY2d 883).

The other contentions raised by the defendant do not warrant reversal of the conviction or modification of the sentence imposed.