■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES YARRELL, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered January 4, 1985, convicting him of attempted murder in the first degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

Both the defendant and his codefendant, Ricky Caldwell,

were indicted, *inter alia,* for the crimes of attempted murder in the first degree (two counts), criminal possession of a weapon in the second degree and in the third degree, and reckless endangerment in the first degree. This indictment arose out of an incident which occurred on October 1, 1983. During this incident, two police officers were shot at as they approached the two defendants, who were about to enter a reportedly stolen Buick which had been under surveillance by the police officers.

The codefendant Caldwell was convicted of all of the aforementioned charges, and this court affirmed his conviction *(People v Caldwell,* 125 AD2d 402). The defendant was convicted of two counts of attempted murder in the first degree and was acquitted of the remaining counts.

On the instant appeal, the defendant argues, *inter alia,* that the People failed to prove his guilt beyond a reasonable doubt.

We disagree.

Since the defendant was acquitted of all the weapons possession charges, it is clear that he was convicted of attempted murder in the first degree on the theory, as charged by the court, that he acted in concert with his codefendant Caldwell, in an attempt to kill the two police officers.

The People adduced evidence at the trial which indicated that as the codefendant opened the door on the driver's side of the Buick, and as the defendant opened the passenger's side door, the police officers identified themselves and yelled "don't move". At this point, the codefendant said "okay, okay". The codefendant then "crouched down and went to his waist with his right hand" and turned counterclockwise with "a weapon in his hand". Simultaneously with both the police officer's command and the codefendant's initial movement, i.e., before any shots were fired, the defendant ducked down on the front passenger seat of the Buick. By this behavior, the defendant indicated that he was aware that the codefendant had a gun, and was about to initiate a shoot-out with the police. The defendant also remained in the Buick when it slowly pulled out of its parking spot shortly after the shoot-out. Contrary to the defendant's contentions, the jury was properly instructed with respect to accessorial liability, both in the court's original charge and subsequently during deliberations when the court further instructed the jury concerning the concept of acting in concert. Moreover, the jurors' questions concerning accessorial liability as it pertained to the attempted murder counts in the event convictions were not returned on the weapons counts

reveal that this jury was particularly cognizant of, and considered, the evidence and the court's instructions in reaching its determination on the attempted murder counts, a determination which this court is loath to disturb under the circumstances. Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt.

Contrary to the dissent's argument, the particular facts in this case are distinguishable from People v Cummings (131 AD2d 865), where the defendant, who was in a car, merely leaned forward, as shots were fired by another person from inside the car, and from People v Shanklin (59 AD2d 588), where the defendant, who was behind the steering wheel, leaned back to avoid a shot which was about to be fired by another person who was sitting in the front passenger seat. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

We also find the defendant's challenges to the court's charge to be either unpreserved for appellate review, or without merit.

Finally, we reject the defendant's contention that the sentences imposed were unduly harsh or excessive. In view of the defendant's criminal history and the gravity of the instant offense, the sentencing court did not abuse its discretion in imposing maximum consecutive sentences (see, Penal Law § 70.25 [2]; People v Brathwaite, 63 NY2d 839; People v Caldwell, 125 AD2d 402, supra). Mangano, J. P., Lawrence and Kooper, JJ., concur.

Brown, J., dissents and votes to reverse the judgment, on the law, and to dismiss the indictment, in the following memorandum in which Harwood, J., concurs. As the majority indicates, since the jury acquitted the defendant of the weapons possession charges, it is apparent that the defendant was convicted of attempted murder on a theory of accomplice liability, rather than upon the theory that he actually fired any shots at the police officers. Given this premise, the evidence adduced was insufficient to establish beyond a reasonable doubt that the defendant shared the intent of his codefendant and aided him in the commission of the crime. The defendant's mere presence at the scene at the time of the shoot-out is not sufficient to establish his guilt (People v McLean, 65 NY2d 758; People v La Belle, 18 NY2d 405), and

his other conduct at the scene, that is, ducking down in the front seat of the car, is equivocal *(see, People v Shanklin,* 59 AD2d 588).

This case is indistinguishable from the case of *People v Cummings* (131 AD2d 865), recently decided by this court. The evidence adduced in *Cummings* established that the defendant was leaning forward in the rear passenger side of the vehicle. This court rejected the argument that the defendant's leaning forward, rather than ducking, was sufficient circumstantial evidence from which to conclude that he was participating in a plan to shoot the victim, finding his conduct to be as consistent with innocence as with guilt. At bar, the defendant's conduct in ducking when the shots were fired was even more indicative of an innocent motive than the conduct of the defendant in *Cummings.* Similarly, in *People v Shanklin (supra),* the court found evidence that the driver of a car leaned back in his seat when the police shouted freeze was insufficient to establish that he shared the intent of his passenger who fired shots at the police across the driver's seat. Moreover, there was no evidence presented in the instant case that the defendant knew his codefendant possessed a gun *(People v Welcome,* 127 AD2d 717).

In sum, the evidence adduced was legally insufficient to establish the defendant's guilt beyond a reasonable doubt.